# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Scottsdale Insurance Company,                    Civil No. 10-3775 (SRN/JJK)
an Ohio corporation,

                    Plaintiff,

                                                 <u>MEMORANDUM OPINION</u>
          v.                                     <u>AND ORDER</u>

The RiverBank,
a Minnesota banking corporation,

                    Defendant.
_____

Jenny L. Sautter & Stacy A. Broman, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, Minnesota 55402, for Plaintiff

Kari L. Gunderman & Peter B. Tiede, Murnane Brandt, PA, 30 East Seventh Street, Suite 3200, St. Paul, Minnesota 55101, for Defendant
_____

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the parties' cross motions for summary judgment and entry of declaratory judgment. For the reasons set forth herein, Plaintiff Scottsdale Insurance Company's Motion for Summary Judgment/Declaratory Judgment [Doc. No. 14] is granted, and Defendant RiverBank's Motion for Summary Judgment/Declaratory Judgment [Doc. No. 12] is denied.

## I.       BACKGROUND

### A.       Underlying State Court Lawsuit

This insurance coverage dispute is based on an underlying state court suit brought by Defendant here, the RiverBank ("RiverBank"), against S.A.S. Rental Properties, LLC ("SAS"), Strand Closing Services, Inc. ("SCS") and Cynthia Taylor Strand and Steven Strand,

individually (collectively, "the Strand defendants").[1]   RiverBank sought recovery against the

Strand defendants in tort and contract, alleging that after the Strands received $600,000 under the

terms of a mortgage loan agreement, they failed to satisfy their first mortgage and failed to

record the second mortgage on the property in question.   (See State Court Compl., Ex. A to

Scottsdale's Compl. [Doc. No. 1].)   The state court suit contained the following causes of action:

(1) breach of contract against SAS; (2) breach of contract against the Strands; (3) negligence

against SCS; (4) fraudulent inducement against SAS, SCS, and Cynthia Strand; (5) fraudulent

misrepresentation and omissions against SAS, SCS, and Cynthia Strand; (6) unjust enrichment

against SAS and Cynthia Strand; (7) conspiracy against SAS, SCS, and Cynthia Strand; and (8)

conversion against SAS and Cynthia Strand.   (Id.)

    In the state court action, RiverBank moved for partial summary judgment on its

negligence claim against SCS and on its breach of contract (guaranty) claim against Steven

Strand, which the court granted on May 14, 2010.   (Washington Cty. Order of 5/14/10, Ex. 4 to

Affidavit of Stacy A. Broman in Supp. Pl.'s Mot. for Summ. J. [Doc. No. 23-1].)   Following an

appeal by SCS, the Minnesota Court of Appeals upheld the district court's decision on April 19,

2011.   RiverBank v. SAS Rental Properties, LLC, No. A10-1758, 2011 WL 1466460, at *3

(Minn. Ct. App. Apr. 19, 2011.)

    RiverBank also reported a complaint involving the loan to the Minnesota Department of

Commerce ("Commerce Department"), which regulates various commercial licenses, including

Cynthia Strand's title insurance producer license, real estate closer license and notary

---

[1]  The suit, filed in Washington County District Court, was captioned The RiverBank v.
S.A.S. Rental Properties, LLC, et al., 82-CV-09-7534.  (See State Court Compl., Ex. A to
Scottsdale's Compl. [Doc. No. 1].)

commission.  (MN Office of Admin. Hrgs. Notice & Order to Show Cause, Ex. 7 to Broman Aff. [Doc. No. 23-1].)  The Commerce Department conducted an investigation into the Strands' actions, including their loan from RiverBank, and, in March 2011, the Commerce Department revoked Cynthia Strand's professional licenses.  (Commerce Dep't's Findings of Fact & Conclusions of Law, Ex. 8 to Broman Aff. [Doc. No. 23-1].)

In addition to RiverBank's civil suit and the Commerce Department's administrative action, the Washington County Attorney's Office brought criminal charges against Steven and Cynthia Strand in June 2010.  (Criminal Compls., Exs. B & C to Scottsdale's Compl. [Doc. Nos. 1-2 & 1-3].)  Among the acts alleged in the criminal complaints is the loan transaction between RiverBank and the Strands (id. at 2, 4), which formed the basis for Count I in the criminal complaints, charging "theft-false representation."  The facts underlying this criminal count mirror the factual basis for RiverBank's civil complaint in the underlying state court lawsuit. (Cf. Count I, Criminal Compls., Exs. B & C to Scottsdale's Compl. [Doc. Nos. 1-2 & 1-3], and State Court Compl. ¶¶ 6-18 [Doc. No. 1-1].)  The criminal charges against Steven Strand were ultimately dismissed, but Cynthia Strand pled guilty to the theft-false representation count and, on August 5, 2011, was sentenced to 21 months' imprisonment.  (See Register of Actions, Washington Cty. Dist. Ct. Case No. 82-CR-2683, attached to Letter of 8/11/11 from S. Broman to Judge Nelson [Doc. No. 47].)[2]

---

[2]  A few weeks after the hearing on the instant motions, counsel for Scottsdale filed a print-out of the state court Register of Actions on this Court's ECF system, documenting that Cynthia Strand had since been sentenced.  (Doc. No. 47).  Such supplementation was proper, particularly as counsel and the Court spoke at the motion hearing about Cynthia Strand's pending sentencing date.  Further, the Register of Actions is publicly available.  (See http://pa.courts.state.mn.us/default.aspx.)

B.      **Insurance Policy Issued by Scottsdale**

Scottsdale issued a Business and Management Indemnity Policy number EKS3006865

("the Policy") to SCS, effective from July 10, 2009 through July 10, 2010.  The Policy had a

$500,000 liability limit for each claim and a $500,000 aggregate limit, subject to a $5,000 self-

insured retention.  The general grant of coverage provides:

> The **Insurer** shall pay the **Loss** which the **insureds** have become legally
> obligated to pay by reason of a **Claim** first made against any **insureds** during the
> **Policy Period**, or, if elected, the **Discovery Period**, and reported to the **Insurer**
> pursuant to Section E.1. herein, for a **Wrongful Act** taking place on or after the
> **Retroactive Date** and prior to the end of the **Policy Period**.

(Policy, Ex. D to Scottsdale's Compl. [Doc. No. 1-4 at 11].) (emphasis in original.)

The Policy contains the following applicable exclusions:

> **Insurer** shall not be liable for **Loss** under this Coverage Section on
> account of any **Claim**:

> 1.      alleging, based upon, arising out of, attributable to, directly or
>         indirectly resulting from, in consequence of, or in any way
>         involving any dishonest, fraudulent or criminal act, error or
>         omission; provided, however this exclusion shall not apply unless
>         and until there is a final judgment as to such conduct.
>         When the exclusion applies the **Insureds** shall reimburse the
>         **Insurer** for any **Costs, Charges and Expenses** advanced;

> 11.     alleging, based upon, arising out of, attributable to, directly or
>         indirectly resulting from, in consequence of, or in any way
>         involving the gaining in fact of any profit or advantage to which
>         the **Insureds** are not legally entitled or any dispute involving fees,
>         expenses or costs paid to or charged by the **Insureds**;

> 15.     alleging, based upon, arising out of, attributable to, directly or
>         indirectly resulting from, in consequence of, or in any way
>         involving, any **Wrongful Act**, fact, circumstance or situation
>         which any of the **Insureds** had knowledge of prior to the
>         **Continuity Date** where such **Insureds** had reason to believe at the
>         time that such known **Wrongful Act** could reasonably be expected
>         to give rise to such **Claim**.

4

(Id. at 12; 14.)

The Policy contains a provision regarding "Innocent Insureds," which provides:

1.       Any exclusion relating to criminal, dishonest, fraudulent or malicious acts, errors or omissions by any of the **Insureds** shall not be applied to any other **insureds** who did not personally participate or personally acquiesce or remain passive after having personal knowledge of such acts, errors or omissions.  However, the knowledge of the Chief Executive Officer and the Chief Financial Officer of a **Company** shall be imputed to the **Company**, for purposes of determining the applicability of such exclusions.

(Id. at 15-16.)

The Policy also contains an attached endorsement entitled "Escrow Agent's Endorsement," which excludes loss on account of any claim:

- alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged commingling of funds;
- alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any willful or intentional failure on the party of any **Insured** to comply with escrow instructions.

(Id. at 21.)

The Policy defines the relevant terms as follows:

2.       **Continuity Date** means the date set forth in Item 3. of the Declarations relating to this Coverage Section. [7/10/2009].

* * *

4.       **Insureds** means:

a.       the **Company**; and

b.       all natural persons who were, now are, or shall become partners, officers, directors, managers, members managers

or employees of the **Company**, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy, but only for **Professional Services** which were rendered, or which should have been rendered, by or for the **Company**, and which are otherwise covered by this Coverage Section.

\* \* \*

5.      **Interrelated Wrong Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of facts, circumstances, situations, events, transactions or causes.

6.      **Loss** means monetary damages, settlements and **Costs, Charges and Expenses** incurred by any of the **Insureds**, but shall not include:

\* \* \*

c.      matters uninsurable under the laws pursuant to which this **Policy** is construed;

d.      future royalties or future profits, restitution, or disgorgement of profits by **Insureds**, or the costs of complying with orders granting injunctive relief;

\* \* \*

7.      **Professional Services** means solely in the performance of providing Closing Services for others for a fee.

8.      **Retroactive Date**-means the date set forth in Item 3. of the Declarations relating to this Coverage Section.

9.      **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, omission or neglect or breach of duty by any **Insureds**, which occurs solely in connection with the **Insureds** rendering of, or actual or alleged failure to render, **Professional Services**.

(Id. at 11-12.)

After RiverBank filed its lawsuit in state court, Scottsdale accepted the defense of the

6

Strand defendants.  As noted, in the underlying suit, RiverBank moved for summary judgment

only on its negligence claim against SCS and its breach of contract claim against Steven Strand

(which had been pled against both Steven and Cynthia Strand).  Apparently, due to a change in

defense counsel, in part, the defendants did not oppose the motion.  See RiverBank, 2011 WL

1466460, at *2.  The district court entered judgment against SCS and Steven Strand for

$636,742.77 and denied the defendants' motions for relief from default judgment and a stay of

the enforcement of the judgment.  In April 2011, the Court of Appeals affirmed the district

court's rulings.  See id., at*2-3.

Scottsdale filed this federal declaratory judgment action in August 2010 against

RiverBank, SAS, SCS, Cynthia Strand and Steven Strand.  This Court granted Scottsdale's

Motion for Default Judgment against SAS, SCS, and Cynthia and Steven Strand, as they did not

respond to the Complaint and made no appearance in this case.  (Order of 8/11/11 [Doc. No.

46].)  Riverbank, therefore, is the remaining defendant in this action.  In the parties' cross

motions for summary judgment/declaratory judgment, Scottsdale argues that the Policy does not

provide coverage for the underlying judgment, and it therefore has no duty to indemnify the

defendants or pay any judgment entered in that suit.  Scottsdale contends that the underlying suit

is not covered because: (1)  the claims arise out of a "wrongful act" that was known to the

insureds; (2) the claims arise out of fraud; (3) the claims arise out of profits to which the insureds

are not legally entitled; (4) the claims arise out of an insured's willful failure to comply with

escrow instructions; (5) the underlying judgment does not constitute a "loss" under the terms of

the Policy; and (6) public policy prohibits coverage for intentional and unlawful acts.

RiverBank, on the other hand, argues that the Policy provides coverage for the

underlying judgment.  It contends that the state court found SCS and Steven Strand negligent and

liable to the RiverBank – liability that is separate and distinct from the liability of Cynthia

Strand, who has been sentenced for her criminal conduct related to the loan transaction at issue.

Because the finding of civil liability in the underlying action was based on a negligence theory,

RiverBank argues that the Policy's exclusion for wrongful or intentional criminal acts does not

preclude coverage, because neither Steven Strand nor SCS were adjudged guilty of any criminal

conduct.  RiverBank therefore contends that the plain language of the Policy provides coverage

for a "loss" (here, the state court judgment) which an insured is legally obligated to pay for a

"wrongful act" (which, RiverBank argues, has been understood to encompass negligent

misconduct).  (RiverBank's Mem. Supp. Mot. Summ. J./Decl. J. at 9-10 [Doc. No. 26].)

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

moving party bears the burden of showing that there is no genuine issue of material fact and that

it is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  A dispute over a fact is

"material" only if its resolution might affect the outcome of the lawsuit under the substantive

law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a fact is

"genuine" only if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Id.   All justifiable inferences are to be drawn in the non-movant's favor and

the evidence of the non-movant is to be believed. Id. at 255.

As to the parties' competing requests for issuance of declaratory judgment, pursuant to Fed. R. Civ. P. 57 and the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. A court may entertain a declaratory judgment action if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (footnote omitted).

### B.     Insurance Contract Interpretation

The parties apparently agree that Minnesota law governs interpretation of the policies in this case and the Court likewise agrees with that conclusion. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003) (state law governs insurance policies). Under Minnesota law, the interpretation and construction of an insurance policy is a matter of law for the court. Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997). "General principles of contract interpretation apply to insurance contracts." Lobeck v. State Farm Mut. Auto. Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998). Insurance policies are interpreted to give effect to the parties' intent. Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). In addition, insurance policies must be construed as a whole, Haarstad v. Graff, 517 N.W.2d 582, 584 (Minn. 1994), and all terms of an insurance policy must be given effect if possible. Bobich v. Oja, 104 N.W.2d 19, 24 (1960); Steele v. Great W. Cas. Co., 540 N.W.2d 886, 888 (Minn. Ct. App. 1995).

If the language of an insurance policy is clear, the policy language must be given its "usual and accepted meaning," Progressive Specialty Ins. Co. v. Widness ex rel. Widness, 635 N.W.2d 516, 518 (Minn. 2001), applying the objective standard of what a "reasonable person" in the insured's position would have understood by the language.  Canadian Universal Ins. Co. v. Fire Watch, Inc., 258 N.W.2d 570, 572 (Minn. 1977); Soo Line R.R. Co. v. Brown's Crew Car of Wyo., 694 N.W.2d 109, 113 (Minn. Ct. App. 2005).

Whether an insurance policy is ambiguous is a question of law for the court.  Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 34 (Minn. 1979).  If the policy language is susceptible to more than one interpretation, it may be considered ambiguous. Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co., 551 N.W.2d 224, 227 (Minn. 1996).  Ambiguous policy language will be construed against the insurer.  Id.; Widness, 635 N.W.2d at 518.

The existence of a duty to indemnify or defend is a legal question. Franklin v. W. Nat. Mut. Ins. Co., 574 N.W.2d 405, 406 (Minn. 1998).  The duty to indemnify "is triggered only when liability is assessed on a claim within the policy coverage." Seren Innovations, Inc. v. Transcon. Ins. Co., A06–917, 2006 WL 1390262, at *8 (Minn. Ct. App. May 23, 2006).  An insurer has a duty to defend where any part of the claim is arguably within the scope of coverage.  Brown v. State Auto & Cas. Underwriters, 293 N.W.2d 822, 825-26 (Minn. 1980).  "This is broader than the duty to indemnify, and this court has held an insurer should provide the defense while reserving its right to contest coverage based on facts developed at trial." Haarstad, 517 N.W.2d at 585.  Scottsdale defended the Strand defendants' claims in the underlying action and seeks a declaration here that it is not obliged to indemnify them, whereas RiverBank seeks

the opposite determination – that Scottsdale must indemnify its insureds.

### C.    General Exclusion for Criminal/Intentional Acts

The Policy's general exclusion provides that the insurer shall not be liable for losses "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving" criminal, fraudulent or dishonest acts.[3]  (Policy at 12 , Ex. D to Scottsdale's Compl. [Doc. No. 1-4].)  The Court finds this language clear and unambiguous, manifesting the parties' intent that the Policy not cover "losses" in any way related to criminal, fraudulent or dishonest acts.  The Policy defines "losses" to include monetary damages, settlements and costs incurred by the insureds.  (Id.)  The damage award in the underlying suit constitutes such a "loss."

In the "Innocent Insureds" provision of the Policy, it states that exclusions relating to criminal, fraudulent or dishonest acts will not be imputed to other insureds who did not personally participate in the acts or acquiesce or remain passive after having personal knowledge of the acts.  (Id. at 15.)   However, the Policy also provides that the knowledge of the CEO or CFO of a company shall be imputed to the company.  (Id.)  In their filings with the Minnesota Secretary of State, Cynthia Strand is identified as the CEO of SCS and the "Manager" of SAS. (Minnesota Secretary of State Business Organizations Inquiries, Exs. 2 & 3 to Broman Aff. [Doc. No. 23-1 at 1-2.].)  In addition, in the general allegations in the underlying state court complaint, RiverBank alleged that "SAS is controlled by Cynthia Strand," and "SCS is

_____

[3]  The Policy provides that this exclusion is not applicable until there is a final judgment as to such conduct.  Because Cynthia Strand was sentenced on August 5, 2011, judgment on her criminal conduct is considered final.  See Burton v. Stewart, 549 U.S. 147, 156 (2007) ("Final judgment in a criminal case means sentence. The sentence is the judgment." (quoting Berman v. United States, 302 U.S. 211, 212 (1937)).

controlled by Cynthia Strand." (State Court Compl. at ¶¶ 7, 9, Ex. A to Scottsdale's Compl.

[Doc. No. 1-1].)   In its negligence claim, in Count III of the underlying complaint, RiverBank

reiterates "SCS is controlled by Cynthia Strand." (Id. ¶ 31.)  Therefore, in light of the Policy

language and Cynthia Strand's clear role as CEO and Manager of the SCS and SAS entities, her

actions may be imputed to SCS and SAS.

The Court turns to the question of whether the criminal/intentional acts exclusion applies

when RiverBank obtained judgment solely on its negligence count against SCS and its breach of

contract claim against Steven Strand.  Several decisions in Minnesota have addressed whether

there is coverage for negligence liability when a third party's independent, intentional acts are

excluded from coverage.  In general, courts have focused on the substance of the underlying

conduct, rather than on whether the victim's subsequent cause of action for damages sounded in

negligence.  See, e.g., Haarstad, 517 N.W.2d at 583; Ross v. City of Minneapolis, 408 N.W.2d

910 (Minn. 1987); Kabanuk Diversified Investments, Inc. v. Credit General Ins. Co., 553

N.W.2d 65 (Minn. Ct. App. 1996); Roloff v. Taste of Minnesota, 488 N.W.2d 325 (Minn. Ct.

App. 1992).

In Haarstad, 517 N.W.2d at 583, the court addressed whether the insurer, State Farm, had

a duty to defend its insured, Graff, for damages, where the injured party, Haarstad, alleged that

Graff had  "negligently" injured him.  Haarstad's injuries stemmed from a physical altercation in

which Graff punched Haarstad in the face repeatedly, breaking his jaw, after discovering

Haarstad in the home of Graff's former girlfriend.  Haarstad sued Graff, who tendered defense of

the suit to his insurer, State Farm.  State Farm refused to defend, arguing that the intentional acts

exclusion of the insurance policy barred coverage. (Id.)  The parties subsequently entered into a

Miller/Shugart settlement, characterizing the incident as an "accident," and calling for Haarstad to collect judgment solely from State Farm.  The trial court found that Graff was covered under the policy and awarded Haarstad $30,000 in damages, as stipulated in the Miller/Shugart agreement.  The Minnesota Court of Appeals upheld the trial court's ruling, finding that while State Farm had no duty to indemnify Graff, it had a duty to defend him against Haarstad's negligence suit because the initial complaint alleged negligence.  Id. at 584.  The Minnesota Supreme Court reversed, holding that "where an insurer knows irrefutably that the conduct alleged in the complaint to be negligent was intentional and therefore excluded from coverage, the insurer has no duty to defend" because "the claim is clearly outside the coverage provided by the policy."  (Id. at 583; 585.)  In light of the viciousness of the physical assault, the court found that the resulting injuries were either expected or intended by Graff and were therefore clearly outside the coverage of the policy.  "Because State Farm . . . had sufficient knowledge of Graff's intentional acts independent of the allegations in the complaint, we hold State Farm had no duty to defend in this case."  Id. at 585.

Similarly, in Ross, Ross was attacked and beaten during a wrestling match at the Minneapolis Auditorium, and sued the City of Minneapolis and the Minneapolis Boxing and Wrestling Club for negligently failing to prevent the assault.  408 N.W.2d at 912.  The Club tendered its defense to its insurer, which denied the provision of a defense based on an assault and battery exclusion in the insurance policy.  While the trial court found that the exclusion did not apply because the underlying action was founded on negligence, rather than assault and battery, the appellate court disagreed: "This was assault and battery, pure and simple, and under the plain language of the policy endorsement was excluded from coverage under this policy."  Id.

13

at 913.

      In <u>Kabanuk</u>, the Minnesota Court of Appeals similarly concluded that the applicable insurance policy's assault and battery exclusion barred coverage for injuries that David Hass, a night club patron, sustained from an assault caused by a third party outside the night club.  553 N.W.2d at 65-66.  Hass sued his attacker, asserting claims of assault, battery and intentional infliction of emotional distress, and he sued the night club, asserting claims of negligent hiring, negligent supervision and negligent infliction of emotional distress.   The nightclub's commercial liability insurance policy included an endorsement excluding coverage for bodily injury arising out of an actual or threatened assault or battery.  <u>Id.</u> at 68.  After the insurer refused to defend the suit, the nightclub instituted a declaratory judgment action against it.   The district court held that there was no coverage due to the policy exclusion, and the appellate court affirmed.  <u>Id.</u> at 70.

      The Court of Appeals reached the same result in <u>Roloff</u>, 488 N.W.2d at 326, in which Roloff was injured in a fight at the Taste of Minnesota Festival and sued his attacker, as well as the organizers of the event, including the St. Paul Downtown Council.  Roloff alleged that the Council was negligent in failing to provide adequate security.  Due to an insurance policy exclusion for assault and battery, the Council's insurer refused to defend it.  After entering into a <u>Miller/Shugart</u> settlement with the Council, Roloff sought leave to file a supplemental complaint, naming the insurer as a garnishee.  The district court denied Roloff's motion and the Minnesota Court of Appeals affirmed, rejecting Roloff's argument that his claims arose out of negligence rather than assault and battery.  <u>Id.</u> at 326-27.

      In <u>Secura Supreme Ins. Co. v. M.S.M.</u>, 755 N.W.2d 320 (Minn. Ct. App. 2008), the

claimant, Jaclyn Larson, was the victim of a knife attack by her neighbor's minor son.  She sued

the juvenile's parents, who had given their son the knife used in the attack, for negligent

supervision and negligent entrustment of a dangerous weapon.  Also, she sued the juvenile for

negligence and intentional assault and battery.  Id. at 322.  The parents' homeowners' insurance

policy, issued by Secura, contained a criminal act exclusion.  Larson maintained that coverage

existed because the parents' negligence was the underlying cause of her injuries, rather than the

juvenile's criminal conduct.  Id. at 326.  She argued that the policy's exclusion for injuries

"resulting from" criminal acts should be more narrowly construed than exclusions for injuries

"arising out of" criminal acts, and that her injuries did not "result from" the juvenile's acts, but

from the parents' negligence.[4]  Id.  The court disagreed, finding that the terms were

interchangeable phrases and that Larson's injuries were "undeniably causally connected" to the

juvenile's criminal conduct in attacking her.  Id. at 327.  Accordingly, the court found that her

injuries "'result[ed] from' this criminal act, notwithstanding the fact that the [parents']

negligence may have also contributed to the same injuries."  Id.

        In this case, the RiverBank obtained its negligence judgment against SCS in the

underlying suit.   The actor for SCS was Cynthia Strand.  In its negligence cause of action in the

state court suit, RiverBank acknowledges that "SCS is controlled by Cynthia Strand."  (State

Court Compl. at ¶ 31, Ex. A to Scottsdale's Compl. [Doc. No. 1-1].)   The only other possible

actor was Steven Strand, however RiverBank's underlying state court complaint focuses on

Cynthia Strand's role in leading the alleged fraudulent activity and RiverBank was clearly aware

---

        [4]  This linguistic distinction is not at issue here, as the Policy uses both phrases,
excluding coverage for injuries "arising out of" and "resulting from" criminal or intentional
conduct.

that Ms. Strand was the human face behind SAS and SCS.  In the underlying complaint,

RiverBank alleged that Cynthia Strand, as opposed to her husband, engaged in fraud, conspiracy,

unjust enrichment and conversion.  (Id. at ¶¶ 40-70.)  Her criminal prosecution reflects her status

as the key actor, as she pled guilty to the theft-false representation charge, whereas the State

dismissed charges against her husband.  In the underlying complaint, RiverBank asserted a

conspiracy cause of action against three defendants – SAS, SCS and Cynthia Strand – implicitly

asserting that this combination functioned as a unit for purposes of the conspiracy count.  (Id. at

¶¶ 60-63.)  It is clear that RiverBank understood that it was Cynthia Strand who operated SAS

and SCS.  While RiverBank argues that the line of cases cited herein are factually

distinguishable, in that they involve a third party intentional actor, the Court does not find this

distinction to be meaningful.  While SCS was found negligent, the actions leading to that finding

were performed by its sole officer, Cynthia Strand, and resulted from the actions for which she

was criminally charged, pled guilty and was sentenced.  Ultimately, RiverBank's injuries

resulted from Cynthia Strand's intentional criminal actions.

The Policy language provides that there is no coverage for claims related to "dishonest,

fraudulent or criminal act[s], error[s} or omission[s]."  (Policy at 12, Ex. D to Scottsdale's

Compl. [Doc. No. 1-4].) The cases cited above, coupled with the Policy language, show that

where the substantive conduct is criminal or intentional, if it is undeniably causally connected to

the alleged negligence, the criminal/intentional act exclusion applies to defeat coverage.  The

word "negligence" is absent from the Policy's grant of coverage – it does not say that coverage

is provided for "negligence."  The apparent intent of the Policy was to provide standard errors

and omissions coverage for honest mistakes.  Like the coverage cases cited herein, the gravamen

of the underlying suit was Cynthia Strand's intentional criminal activity.  While that activity could also provide a basis for liability in negligence or contract, such liability is collateral to the criminal acts involving fraud and dishonesty that are alleged in the underlying suit.  The substantive conduct alleged is criminal and is undeniably connected to the conduct for which the state court entered judgment.

RiverBank, however, argues that language in the Minnesota Court of Appeals' decision affirming the district court's entry of judgment supports its position on coverage.   In its de novo review, the appellate court focused on whether there were any genuine issues of material fact with respect to RiverBank's negligence claim against SCS and breach of contract claim against Steven Strand.  See RiverBank, 2011 WL 1466460, at *2.   In response to Scottsdale's argument that the facts were insufficiently developed to prove whether SCS had breached its duty of care, the appellate court commented, "Appellant appears to confuse any duty owed by Cynthia Strand to respondent with the legal duty of appellant as an entity." Id.   In affirming the district court's decision, the appellate court held: "Cynthia Strand's conduct in this matter does not obviate appellant's duty to respondent, although it may be an independent basis for Cynthia Strand's liability.  Thus appellant's claim that respondent could not assert a negligence claim against appellant 'without the input of Ms. Strand' is incorrect."  Id.

In the state court appeal, the Minnesota Court of Appeals was concerned with the question of liability and whether there were any genuine disputes of material fact on the limited grounds of RiverBank's motion.  The court was correct in holding that Cynthia Strand's involvement in the alleged negligence was not material to the liability decision on summary judgment, because RiverBank's motion concerned only SCS's alleged negligence.  The district

court found, as affirmed by the appellate court, that SCS owed a separate legal duty to the plaintiff, as a matter of law, and there was a separate basis for negligence.  Here, however, this Court is concerned with insurance coverage.  Under these facts, there are not separate bases for coverage when there is but one actor-insured. To the extent that SCS is liable, SCS's sole actor was Cynthia Strand.   RiverBank's negligence claim was that SCS failed to tender payment of $507,494.29 in satisfaction of an existing mortgage, and failed to record the RiverBank mortgage. The person responsible for tendering payment and for recording the mortgage was Cynthia Strand, the CEO of SCS.   Her criminal charge of theft-false representation, for which a guilty plea was entered and for which she was sentenced, was for conduct involving the RiverBank mortgage.  Her failure to record that loan was not simple inadvertence or incompetence.  Rather, she did so for her own financial gain.  (Plea Hrng. Tr. at 10, Ex. 1 to Affidavit of Jenny Sautter in Opp'n to Def.'s Mot. for Summ. J. [Doc. No. 30-1]) (Q: "Is it a fair statement that you kept the money [from the RiverBank mortgage transaction] and then used it for your own personal gain?" A: "Yes.")

In addition, unlike the state court appeal, the resolution of the matter before this Court requires reference to entirely different authority – the Policy, primarily, and applicable law involving the interpretation of contracts, and insurance coverage legal precedent.   The "negligence" label of the underlying judgment is not determinative of the issue before this Court. Instead, the Court must compare the language of the Policy with the facts before it.   In other words, simply because SCS was found liable for negligence, does not mean that the loss was caused by non-criminal acts.  Such an outcome would, in fact, run counter to the facts, including Cynthia Strand's admission of guilt and sentence for theft-false representation on the very facts

that form the basis for the allegations in RiverBank's underlying lawsuit.   The Court therefore finds that the Policy's general exclusion for loss  "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any dishonest, fraudulent or criminal act, error or omission . . . ." applies and the underlying state court judgment does not fall within the coverage of the Policy.[5]  (Policy, Ex. D to Scottsdale's Compl. [Doc. No. 1-4 at 12].)  Because the duty to indemnify arises when liability is assessed on a claim within the policy coverage, <u>Seren Innovations, Inc.</u>, 2006 WL 1390262, at *8, Scottsdale has no duty to indemnify any of the state court defendants or pay any judgment or settlement entered in the underlying lawsuit.

In addition to the Policy language itself and case law interpreting similar exclusions, the conclusion that coverage is excluded for criminal acts is supported by public policy.  <u>State Farm Fire and Cas. Co. v. Schwich</u>, 749 N.W.2d 108, 114 (Minn. Ct. App. 2008) ("[I]t is against public policy to 'licens[e] intentional and unlawful harmful act[s]'") (quoting <u>Iowa Kemper Ins. Co. v. Stone</u>, 269 N.W.2d 885, 887 (Minn. 1978)).  It is well established that Minnesota courts have declined to find liability coverage for unlawful conduct and serious criminal acts.  <u>See R.W. v. T.F.</u>, 528 N.W.2d 869, 873 (Minn. 1995) (refusing, on public policy grounds, to "promote the abdication of personal responsibility by providing insurance coverage" for knowing transmission of a sexually transmitted disease); <u>Am. Family Mut. Ins. Co. v. Peterson</u>, 405 N.W.2d 418, 422 (Minn. 1987) (stating that purpose of intentional act exclusion is "to deny insured license to commit wanton and malicious acts."); <u>Nat'l Union Fire Ins. Co. v. Gates</u>, 530 N.W.2d 223, 227 (Minn. Ct. App. 1995) (denying on public policy grounds coverage for

---

[5]  Other Policy exclusions may also apply, but the Court finds that the language in the general exclusion is dispositive.

criminal acts of physical and sexual abuse), <u>review denied</u> (Minn. June 23, 1995).  While

RiverBank argues that public policy supports providing coverage for the victim of a legal wrong,

from a practical standpoint, if coverage were to be found for the conduct at issue here, then in

every case involving intentional   criminal conduct and possible negligence, a good lawyer could

defeat insurance policy exclusions by suing only under a negligence theory of liability.  Such

legal gamesmanship cannot be supported by the law.

RiverBank also argues that if this Court finds there is no coverage, the illusory coverage

doctrine should be invoked.  The concept of illusory coverage is viewed "as an independent

means to avoid an unreasonable result when a literal reading of a policy unfairly denies

coverage."  <u>Jostens, Inc. v. Northfield Ins. Co.</u>, 527 N.W.2d 116, 118 (Minn. Ct. App. 1995).

Under Minnesota law, courts have held that that the doctrine is best applied "where part of the

premium is specifically allocated to a particular type or period of coverage and that coverage

turns out to be functionally nonexistent." <u>Id.</u> at 119.  So, if, for example, under the facts of some

of the insurance coverage cases cited herein in which a third party assaults a patron of a

nightclub or at an event, a premium was specifically allocated to provide coverage for

non-employee assault or battery claims, this doctrine might apply.  Here, however, there is no

evidence that, for the sake of argument, a premium was specifically allocated for the criminal or

fraudulent acts of an employee or officer.  The illusory coverage doctrine is inapplicable here.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Plaintiff Scottsdale Insurance Company's Motion for Summary

Judgment/Declaratory Judgment [Doc. No. 14] is **GRANTED**; and

2.    Defendant RiverBank's Motion for Summary Judgment/Declaratory Judgment

[Doc. No. 12]  is **DENIED;**

3.      Scottsdale's Business and Management Indemnity Policy issued to Strand Closing

Services, Inc. under Policy No. EKS3006865 for the policy period 07/10/09 -

07/10/10 does not provide coverage with respect to the judgment in the amount of

$636,742.77 entered in the underlying lawsuit brought by The RiverBank against

S.A.S. Rental Properties, LLC, Strand Closing Services, Inc., Cynthia Taylor

Strand and Steven Strand; and

4.      Plaintiff Scottsdale Insurance Company has no duty to indemnify any the

underlying state court defendants or pay any judgment or settlement entered in the

underlying lawsuit under the Scottsdale policy.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**



Dated: September 7, 2011

                                        s/Susan Richard Nelson

                                        SUSAN RICHARD NELSON
                                        United States District  Judge